IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 8:03CR463 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| DONNA JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

Pending before me is a motion for specific performance of plea agreement (filing 118) which was submitted on July 26, 2005, one week before the trial of this case has been scheduled. After hearing the position of counsel during two telephone conferences, I will grant the motion in part and deny it in part.

Because this matter is unusual, and I do not want any misunderstanding at a later date, I will explain the background and the basis for my ruling. In doing so, I compliment counsel for both sides for their civil and professional behavior under very demanding circumstances. The conduct of the defendant in these proceedings has been frustrating for everyone, and, despite her behavior, I sincerely appreciate both lawyers' untiring efforts to see to it that justice is done.

## *I. Background*

To fully understand the legal analysis that will follow, a relatively detailed knowledge of the relevant facts is necessary. It is helpful to look first at the charge. Then I examine the defendant's several efforts to plead guilty, and my acceptance of her last plea and the related plea agreement. After that, I examine the defendant's response to the presentence report and the sworn testimony that she gave in support of her objections. As I will discuss, that testimony contradicted her sworn testimony when she last pleaded guilty. Then, I describe my decision to withdraw acceptance of the plea and the plea agreement.

*The Charge*.

Count I of the superseding indictment (filing 31) makes the following allegations:

PART ONE: INTRODUCTION

At all times material herein:

1. Nebraska Health and Human Services (NHH) is an agency of the State of Nebraska responsible within the state of Nebraska for the administration and payment of benefits to qualified individuals from various federally funded or partially federally funded benefit programs including Aid to Dependent Children (ADC), Aid to the Aged, Blind, and Disabled (AABD), the Nebraska Low Income Energy Assistance Program (NLIEAP), the Child Care Program (CC), and the Food Stamp Program (FSP).

2. NHH, by and through its network of social service workers, issues benefit payments from the aforementioned programs by way of computer generated warrants and coupons calculated in amount and quantity by the input provided by social service workers to the Nebraska Family Online Client User (N-FOCUS) Computer System.

3. DONNA J. JOHNSON (JOHNSON), defendant herein, was a social service worker with NHH responsible for the payment of benefits as above described to qualified individuals.

PART TWO: THE SCHEME TO DEFRAUD

1. From on or about January 2000 and continuing through April 2002, in the District of Nebraska and elsewhere, the defendant JOHNSON devised and intended to devise a scheme and artifice to defraud and for obtaining money by means of materially false and fraudulent pretenses, representations, and promises, hereinafter more particularly set forth, from NHH, the defendant, well knowing the pretenses, representations, and promises would be and were false when made.

2.      It was part of the scheme that the defendant JOHNSON would cause the input of materially false information into N-FOCUS for the purpose of qualifying various individuals to receive benefits and payments under ADC, AABD, NLIEAP[,] CC and FSP (programs to be defrauded) who were not otherwise qualified or eligible to receive said benefits or payments.

3.      It was a part of the scheme to defraud that defendant JOHNSON caused NDHH to issue and provide benefits and payments under ADC, AABD, NLIEAP, CC and FSP to individuals not qualified or eligible to receive said benefits and payments.

4.      It was a part of the scheme to defraud that defendant JOHNSON solicited and received kickbacks in cash and in kind from individuals receiving benefits and payments from NHH on account of defendant JOHNSON's manipulation of N-FOCUS with materially false or misleading information.

5.      It was a part of the scheme to defraud that defendant JOHNSON would update, maintain, input, process, and manipulate N-FOCUS with materially false or misleading information.

6.      It was a part of the scheme to defraud that defendant JOHNSON would manipulate N-FOCUS to authorize and certify the issuance of benefits and payments from the programs to be defrauded to individuals not qualified or eligible to receive said benefits and payments.

7.      It was a part of the scheme to defraud that the defendant JOHNSON used and caused the use of materially false, fraudulent, deceptive, misleading, and inaccurate computer input and programming practices, procedures, representations, records, and codes in order to maximize the cost to and monies received from and through NHH.

8.      It was a part of the scheme and artifice to defraud that the defendant JOHNSON would contrive and set up false settings, situations, meetings, consultations, procedures, correspondence, and lulling communications with NHH representatives, associates, and employees and/or other individuals or associates.

9.      It was a part of the scheme to defraud that the defendant JOHNSON made and caused to be made material and intentional misrepresentations of fact to NHH[,] its representatives and employees, by and through N-FOCUS and otherwise,

concerning biographical data and other required information for individuals qualifying to receive benefits and payments in the above described programs to be defrauded.

      10. It was further a part of the scheme to defraud that the defendant JOHNSON made and caused to be made material and intentional representations of fact to NHH, its representatives and employees, by and through N-FOCUS and otherwise concerning the nature of relationships between herself and various individuals that she caused to receive benefits and payments from the programs to be defrauded.

      11. It was further part of the scheme and artifice to defraud that the defendant JOHNSON defrauded NHH and the programs to be defrauded in the approximate amount of one hundred eighty thousand ($180,000) dollars.

## PART THREE: CHARGING COUNTS

### COUNTS 1-3

(Mail Fraud - 18 U.S.C. § 1341)

      1. Part One and Part Two of this Indictment are hereby incorporated by reference and realleged the same herein.

      2. On or about the dates set forth below, in the District of Nebraska, the defendant JOHNSON, for the purpose of executing the aforesaid scheme and artifice to defraud, and in attempting to do so, did knowingly cause the following mail matter to be delivered by the United States Postal Service and interstate commercial carriers, according to the directions thereon, each of said mailings constituting a separate count as set forth below:

| COUNT | FROM | DATE | CONTENTS | RECEIVER |
|---|---|---|---|---|
| 1 | NHH - mailed from U.S. Post Office located at 700 R Street, Lincoln, Nebraska 68508 | 9/19/01 | State of Nebraska Treasury Warrant to Denay Ward for $375.00 | Denay Ward 2626 Caldwell Omaha, Nebraska 68131 |

### *The Plea and Plea Agreement*.

The defendant indicated that she wanted to plead guilty in November of 2004. (Filing 43.) However, on November 29, 2004, at the date set for the plea hearing, Ms. Johnson changed her mind and requested a trial. (Filing 52.) After that, trial was set for March 28, 2005. (Filing 55.)

On the day set for trial, March 28, 2005, Ms. Johnson changed her mind again and indicated that she wanted to plead guilty to Count I. (Filing 80.) In doing so, she and her attorney signed a 13-page, single-spaced, petition to enter a plea of guilty. (Filing 82.)

There are two portions of the petition to enter a plea of guilty that are pertinent to the pending motion. The first portion, regarding the factual basis for the plea of guilty, recited that Ms. Johnson admitted, among other things, that: "I received money from Denay Ward as alleged in Count I of the superseding indictment." (Filing 82 at 13, ¶ 47.) Immediately following those words were this statement: "I understand that if I have knowingly and intentionally made any false answers in this petition, my answers may be used against me in a prosecution for perjury or making a false statement." (Id.)

The petition to enter a plea of guilty was predicated upon a plea agreement that was hand-written and entered into the petition to enter a plea of guilty. (Filing 82 at 11, ¶ 37(b).) In pertinent part, the government agreed not to prosecute the defendant for other charges in exchange for the plea of guilty and "per F.R.Crim.P 11 (c)(1)(C) the court will impose a sentence of not more than 1 year and 1 day and the defendant may file motions for departure for a lower sentence." (Id.) Since a jury had been summoned and trial was about to commence at the time the defendant announced her desire to enter her plea of guilty, the costs for summoning the jury were to be taxed to the defendant pursuant to the plea agreement. (Id.)

I conducted a Rule 11 inquiry of Ms. Johnson. (Filing 105.)  Ms. Johnson was appropriately informed of the charges and the penalties.  (Id. at 3.)

Before inquiring further, and after Ms. Johnson had admitted that she had received a copy of the charging instrument "prior to today" (id. at 3), I summarized the offense to which she was pleading guilty.  In particular, I told her that Count I essentially alleged that the Nebraska Department of Health and Human Services mailed a check to Denay Ward as a part of the defendant's mail fraud scheme.  (Id. at 4.)

After that, the defendant was placed under oath.  A very thorough question and answer session followed that, in my opinion, complied with the requirements of Rule 11.  (Id. at 4-41.)

In particular, and while Ms. Johnson was evasive (e.g., id. at 32-34), she admitted under oath that she had committed the crime to which she had entered her plea.  Referring to her petition to enter a plea of guilty, I asked Ms. Johnson: "You wrote down here, 'I received money from Denay Ward as alleged in Count I of the superseding indictment?'  Is that true?" (Id. at 35.)  Ms. Johnson responded: "Yes.  Yes, to plead guilty and move on with this, yes." (Id. at 35-36.)  Earlier Ms. Johnson answered "yes" to a nearly identical question.  (Id. at 31.)

In addition, Ms. Johnson specifically admitted that Denay Ward received a welfare check that Johnson caused to be sent to Ward (id. at 34); that it was Johnson's "job to see that that happened" (id.); that after Ward received the welfare check "Denay Ward gave me some money.  Whether it came from a check, I don't know." (id.); and that Johnson had no business relationship with Ward except to the extent that Ward was a welfare client.  (Id. at 34-35.)

I also inquired of Ms. Johnson regarding her understanding of the plea agreement. (Id. at 26-30.) Both lawyers described their understanding of the plea agreement, and Ms. Johnson agreed with those descriptions. (Id. at 25.)

Ms. Johnson understood that the plea agreement capped her prison time at no more than one year and one day, but Johnson was free to argue and move for a lesser sentence. (Id.) Ms. Johnson specifically stated that there were no other agreements, and that no one had made any predictions inconsistent with the plea agreement. (Id. at 26.)

The sentencing process, including the fact that I would us the advisory Guidelines, was thoroughly explained. (Id. at 16-17.) She was informed that both sides could object to the presentence report and that a hearing would be held to resolve any such objections. She was told that I would use the advisory Guidelines to calculate the appropriate sentence, but that if I accepted the plea agreement I could not sentence her to prison for more than 1 year and 1 day.

Regarding the issue of restitution, Ms. Johnson stated that she understood that the court could order restitution based upon all the relevant conduct including the counts for which there were no admissions. (Id. at 11-22.) She was told that if there was an objection to the amount of restitution, a hearing would be held to determine the issue. (Id. at 15.) She was warned, however, that "you can't back up on your Plea Agreement" and she agreed. (Id.)

Ms. Johnson personally and specifically asked me to accept her guilty plea. (Id. at 39.) She also personally and specifically asked me to accept her plea agreement. (Id. at 38.) Upon being advised by both counsel that the guilty plea was

knowing, intelligent and voluntary and that there was a factual basis for it, I accepted the plea and the plea agreement.[1] (Id. 38-39.)

### *The Presentence Report, Johnson's Contradictory Testimony and the Decision to Withdraw Acceptance of the Plea.*

The presentence report set Ms. Johnson's total offense level at 18 with a criminal history category of I. (PSR ¶ 91.) The Guideline imprisonment range was 27 to 33 months (id.), the supervised release range was 2 to 3 years (id. at ¶ 94), the fine range was $6,000 to $60,000 (id. at ¶ 99), and restitution in the amount of $180,212.51 was suggested. (Id. ¶ 104.)

Ms. Johnson objected to the presentence report. (Filing 106.) Among other things, she challenged the amount of loss (which I also understood to be a challenge to the restitution amount), the role in the offense, the enhancement for abuse of a position of trust, lack of reduction for acceptance of responsibility, and conflict with the plea agreement. As to those objections, I issued tentative findings setting them for resolution at a hearing where the government would bear the burden of proof by the greater weight of the evidence as to aggravating factors and the defendant would bear the burden of proof as to mitigating factors. (Filing 107.) However, I also specifically gave notice that "having accepted the plea and the plea agreement" I would impose the prison sentence (not more than 1 year and 1 day) permitted under the plea agreement even though such a sentence might be below the otherwise applicable advisory Guidelines. (Filing 107 ¶ 3.)

At the commencement of the sentencing hearing held on June 24, 2005, I personally inquired of Ms. Johnson whether she still wished to be bound by the plea agreement. (Filing 114 at 2.) She stated that she did. (Id. at 2.)

---

[1] It is not my normal practice to accept plea agreements until after I see the presentence report. For a variety of reasons, I did not follow that practice here.

We then began to take evidence on the defendant's objection to the presentence report. Among other evidence, the government presented Jana McDonough, a fraud investigator with the Nebraska Department of Health and Human Services. (Id. 7-72.) McDonough explained in detail Johnson's fraud as it regarded all counts of the superseding indictment and she provided an analysis of how to properly calculate the amount of loss and restitution. At Ms. Johnson's insistence and over the evident reluctance of her counsel (id. at 73-74), Johnson then testified in rebuttal to McDonough. (Id. at 75-101.)

On cross examination by government's counsel, Ms. Johnson contradicted the statements that she had made in her petition to enter a plea of guilty regarding Denay Ward. She stated that "I didn't write " the part of the petition to enter a plea of guilty that recounted her culpable conduct respecting Denay Ward and she added that her lawyer had written those words. (Id. at 95-96.) Johnson additionally stated that her lawyer "told me that's what you guys do."[2] (Id.)

I then questioned Ms. Johnson. I reminded Ms. Johnson that she had earlier told me when she was under oath during the Rule 11 hearing that the statement about Denay Ward in the petition to enter her plea of guilty was true. (Id. at 98-99.) Very evasively, Ms. Johnson responded that "I received some money from Denay Ward," but "I didn't receive money from Denay Ward as a result of a check" and "it had nothing to do with the check." (Id. at 99.) I then asked Johnson whether she admitted "doing something illegal in this case" and she replied, "No." (Id.)

---

[2] To the extent that Johnson claimed that her lawyer told her to sign a petition to enter a guilty plea that was untrue, such an accusation is unbelievable. David Stickman, the Federal Public Defender for the District of Nebraska, represents Ms. Johnson. He is a person of the highest integrity and I have not the slightest reason to think that he would do such a thing.

-9-

I then offered to allow Ms. Johnson the opportunity to withdraw her plea. (Id. at 100-103.)  After consulting her counsel, Ms. Johnson, through her counsel, stated that she "would like to proceed with this hearing, stand on her plea of guilty and stand on her plea agreement. " (Id. at 101, 103.)

I discussed the situation with counsel.  Defense counsel candidly admitted that Ms. Johnson's testimony in support of her objections to the presentence report "were in disagreement with the facts that were in the petition to enter a plea of guilty."  (Id. at 103.)

Concluding that Ms. Johnson had probably obstructed justice and very likely lied on the witness stand during her testimony in support of her objections to the presentence report and that Johnson was endeavoring "to have her cake and eat it too[,]" I concluded that the best way to protect Ms. Johnson's rights was to reject the plea and plea agreement and set the matter for trial. (Id. at 104.)  I therefore withdrew my acceptance of the guilty plea and the agreement and I set the matter for trial on August 1, 2005, as the number one case.  (Id. at 105-106.)

## II.  Analysis

Ms. Johnson argues that having accepted the plea and the plea agreement, I cannot change my mind.  She is wrong.

While Ms. Johnson is incorrect, that does not mean that I should offer her no relief.  Indeed, I will permit her to correct the situation if she desire to do so.  If she does so, I am happy to again accept the plea and plea agreement.

### *If There is Fraud, a Judge Can Change His Mind*.

Ms. Johnson relies upon a general rule.  That rule has been stated this way by our Court of Appeals:

> Once a court has accepted an agreement, however, there is no provision in the rules that allows it to reject or modify the agreement. If the . . . court does not adhere to the terms of a plea agreement, a defendant has two remedies, namely, specific performance of the plea agreement or withdrawal of the plea.

United States v. Olesen, 920 F.2d 538, 540 (8th Cir. 1990) (having unconditionally accepted a plea agreement, the district judge could not alter that agreement; remand was warranted to reinstate the original plea agreement) (citing United States v. Jefferies, 908 F.2d 1520, 1526 (11th Cir. 1990)).

But, as one might imagine, there is a big exception to the general rule. That exception, based upon the inherent power of the court, exists "where there is a fraud on the court." Olesen, 920 F.2d at 541 (citing United States v. Partida-Parra, 859 F.2d 629, 632-33 (9th Cir. 1988)). See also United States v. Ritsema, 89 F.3d 392, 400 (7th Cir. 1996) (collecting cases). Fraud is exactly what confronts me here.

Ms. Johnson insists that I rely upon her plea and plea agreement, and the testimony that she gave under oath that induced me to adopt the plea and plea agreement. But, in order to obtain a sentencing advantage, she also denies (under oath) the truth of her prior sworn testimony. At worst, one of the two sworn declarations are untrue, and Ms. Johnson has perjured herself.[3] At best, she has committed a fraud upon the court.

### *Ms. Johnson's Choice*

While I am not obligated to do so, I will give Ms. Johnson the opportunity to withdraw her testimony in support of her objections to the presentence report. If she does so, I will again accept the plea and the plea agreement as she desires. I will

---

[3] I have carefully reviewed the transcripts. There is no basis to conclude that Ms. Johnson was either mistaken or confused.

-11-

resolve the objections to the presentence report on the evidence presented to me, but without her testimony. This alternative will rectify the fraud on the court perpetrated by Ms. Johnson's contradictory sworn declarations. If Ms. Johnson does not elect to withdraw her sentencing testimony, my decision withdrawing acceptance of the plea and plea agreement will stand, and we will go to trial. The choice is hers.

IT IS ORDERED that:

1. The motion for specific performance of plea agreement (filing 118) is denied except as provided in the following paragraph.

2. On Monday, August 1, 2005, at 9:00 A.M., Ms. Johnson will be given an opportunity to withdraw her sentencing testimony in support of her objections to the presentence report. If she does so, I will again accept the plea and the plea agreement as she desires. I will resolve the objections to the presentence report on the evidence presented to me, but without her testimony. If she does not elect to withdraw her sentencing testimony, my decision withdrawing acceptance of the plea and plea agreement will stand, and we will go to trial on Tuesday, August 2, 2005 at 9:00 A.M.

July 28, 2005.                                                  BY THE COURT:

*s/Richard G. Kopf*
United States District Judge